IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–00970–PAB–KMT

PREDATOR INTERNATIONAL, INC.,

    Plaintiff,

v.

GAMO OUTDOOR USA, INC., a Florida corporation, and
INDUSTRIAS EL GAMO, S.A., a Spanish corporation,

    Defendants.

---

## ORDER

---

This matter is before the court on Predator's "Motion to Amend Third Amended Complaint Under Fed. R. Civ. P. 15(a)(2) to Remove Patent Infringement Claims," (Doc. No. 142 [Mot.]), Defendants' Response (Doc. No. 149 [Resp.]) and Predator's Reply (Doc. No. 150 [Reply]).[1]

### STATEMENT OF THE CASE

This suit arises out of an intellectual property dispute over a "novel lead airgun pellet with a hard polymer tip" invented by Thomas May and Lee Phillips. (Doc. 4 at ¶ 10.) Mr. May and Mr. Phillips formed Predator International, Inc. in 2000 for the research and development of

---

[1] Predator incorporated by reference the facts and arguments set forth in its Motion to Dismiss (Doc. No. 113 [Mot. Dismiss]) into its Motion to Amend. (*See* Mot. at 2 n.1)

pellets. (Doc. 119.) Mr. May was President and Mr. Phillips was Vice-President. (*See id.*) In 2001, Mr. May and Mr. Phillips filed U.S. Patent Application No. 09/770,816 for Polymer Ballistic Tip Pellets, which matured into U.S. Patent No. 6,526,893 (the '893 Patent) on March 4, 2003. (*Id.* at ¶ 13.) In 2002, Mr. Phillips stepped down from his duties at Predator and assigned his interest in the company to Mr. May. (Doc. 120; Reply Ex. 4 at 67-68.)

The current owners of Predator purchased the company from Mr. May in 2007, believing that Predator owned all rights, title, and interest to the '893 Patent. (*See* Reply at 2; Mot. Dismiss at 2.) In 2008, Predator discovered that it did not have an assignment of the '893 Patent from Mr. May. (Reply Ex. 1.) Mr. May executed such an assignment on December 2, 2008. (Reply Ex. 4 at 62-63.) In February 2009, Predator discovered that the document on which Mr. May relied may not have assigned Mr. Phillips' interest in the '893 Patent to Mr. May. (Reply Ex. 1 at ¶ 5.) Predator has asked Mr. Phillips to execute an assignment to clarify Predator's ownership of the '893 Patent, but Mr. Phillips has declined. (*Id.* at ¶¶ 6-8.) On April 7, 2010, Predator filed a complaint against Mr. Phillips in Colorado state court to clarify ownership interests in the '893 Patent. (*Id.* at ¶ 9.) Predator seeks to amend its complaint to remove the patent infringement claim, so that it can resolve the ownership dispute before refiling the patent infringement claim. (*See* Mot. Dismiss at 3.)

## PROCEDURAL HISTORY

Predator originally filed suit against Gamo Outdoor USA, Inc. (Gamo USA) on April 28, 2009 alleging, *inter alia,* patent infringement, trade dress infringement, copyright infringement and various state law claims. (Doc. No. 1.) On May 6, 2009, before the complaint was served or

2

Gamo USA had responded, Predator filed a First Amended Complaint. (Doc. No. 4.) On October 20, 2009, the court granted Predator's Motion to File a Second Amended Complaint to add Industrias El Gamo, S.A. (Gamo Spain) as a defendant. (*See* Doc. Nos. 72 & 73.) On November 6, 2009, Predator filed a Motion for Leave to File a Third Amended Complaint to add a claim for exemplary damages against Gamo USA. (Doc. No. 84.) Then, on March 2, 2010, before Gamo Spain answered the Second Amended Complaint, Predator filed a "Notice of Dismissal Without Prejudice of Count I-Patent Infringement Against Industria El Gamo, S.A." purportedly pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Doc. No. 111.) The next day, March 3, 2010, the court granted Predator leave to file a Third Amended Complaint and Predator's proposed Third Amended Complaint, which it had attached to its motion for leave to amend in November 2009, and which contained the patent infringement claim against both defendants, was entered into the docket. (*See* Doc. Nos. 112 & 117.)

On March 4, 2010, Predator filed a Motion to Dismiss its patent infringement claim against Gamo USA. (Doc. No. 113.) Predator sought to dismiss the patent infringement claim without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). (*Id.*) Predator followed this, on March 5, 2010, with another "Notice of Dismissal Without Prejudice of Count I-Patent Infringement Against Industrias El Gamo, S.A." to clarify that the previous notice of dismissal intended to remove the patent infringement claim against Gamo Spain from the Third Amended Complaint as well. (*See* Doc. No. 116 & Mot. at 2.)

On May 14, 2010, Predator filed the present motion to amend, pursuant to Federal Rule of Civil Procedure 15(a), the Third Amended Complaint. In it Predator seeks to amend the Third

3

Amended Complaint "to properly remove Count I—the patent infringement claim—against both [Defendants]." (Mot. at 1.) Because Predator's Motion to Dismiss the patent infringement claim against Gamo USA is still pending, the docket contains the following documents relevant to this issue:

1. Predator's March 2, 2010 Notice of Dismissal, pursuant to Rule 41(a)(1)(A)(i), of the patent infringement claim against Gamo Spain (Doc. No. 111);

2. Predator's March 4, 2010 Motion to Dismiss, pursuant to Rule 41(a)(2), the patent infringement claim against Gamo USA (Doc. No. 113);

3. Predator's March 5, 2010 Notice of Dismissal, pursuant to Rule 41(a)(1)(A)(i), of the patent infringement claim against Gamo Spain in the Third Amended Complaint (Doc. No. 116); and

4. Predator's May 14, 2010 Motion to Amend the Third Amended Complaint, under Rule 15(a)(2), to remove the patent infringement claim against both defendants (Doc. No. 142).

In responding to Predator's Motion to Dismiss, Gamo USA indicated that it did not oppose a dismissal of Predator's patent infringement claim, but that the dismissal should be with prejudice, or, if dismissed without prejudice, Gamo USA should be awarded attorney's fees. (Doc. No. 126 at 4, 14.) While Predator's Motion to Amend was referred to this court (Doc. No. 143), its Motion to Dismiss was not. On June 9, 2010, this court ordered Defendants to respond to Predator's Motion to Amend the Third Amended Complaint and to address 1) whether Defendants oppose the motion to amend, 2) whether dismissal or removal of Predator's patent infringement claim is more appropriately addressed under Rule 15 or Rule 41 and 3) if

Defendants conclude Rule 15 provides the more appropriate analysis, whether Predator should be granted leave to amend. (Doc. No. 148.) Defendants filed a response on June 23, 2010 and Predator filed its reply on July 1, 2010. The matter is ripe for adjudication.

**LEGAL STANDARD**

*1.      Federal Rule of Civil Procedure 41*

Rule 41(a) governs voluntary dismissals by a plaintiff. Rule 41(a)(1) provides, ". . . the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment . . . ." Fed. R. Civ. P. 41(a)(1)(A)(i). Rule 41(a)(2) states that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

Both subsections of Rule 41(a) use the term "action." In suits involving multiple claims, most circuit's have read this rule to refer to dismissal of the entire action as opposed to dismissal of a single claim or of less than all the claims in the action. *See, e.g.*, *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 (9th Cir. 1988) (citing cases). The Tenth Circuit has found no authority to support the contention that Rule 41(a) applies to dismissal of less than all claims in an action. *Gobbo Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123 (10th Cir. 1996). A plaintiff who wishes to dismiss some claims, but not others, should do so by amending the complaint pursuant to Rule 15. *See Campbell v. Altec Indus., Inc.*, 605 F.3d 839, 841 n.1 (11th Cir. 2010); *Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1513 (9th Cir. 1995); *Skinner v. First Am. Bank of Va.*, No. 93-2493, 1995 WL 507264, at *2 (4th Cir. 1995)

5

(unpublished); *Mgmt. Investors v. United Mine Workers of Am.*, 610 F.2d 384, 393-94 (6th Cir. 1979); *see also* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362 (3d ed. 2008). Nevertheless, courts frequently construe motions to dismiss fewer than all claims under Rule 41 as motions to amend under Rule 15. *See, e.g.*, *Bragg v. Robertson*, 54 F. Supp. 2d 653, 660 (S.D.W.Va. 1999); *Paglin v. Saztec Intern., Inc.*, 834 F. Supp. 1184, 1189 (W.D. Mo. 1993); *Campbell By and Through Jackson v. Hoffman*, 151 F.R.D. 682, 684 (D. Kan. 1993);

2. ***Federal Rule of Civil Procedure 15***

Because Predator filed its motion after the deadline for amending the pleadings,[2] this court employs a two-step analysis, first determining whether Predator has shown good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b), then evaluating whether Predator has satisfied the standard for amendment of pleadings under Federal Rule of Civil Procedure 15(a). This Court has said that

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that the scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."

*Pumpco, Inc. v. Schenker Int'l, Inc*., 204 F.R.D. 667, 668 (D. Colo. 2001) (internal citations omitted). To show that it has been diligent in attempting to meet the deadlines, the party seeking

---

[2] The deadline to add parties and amend the pleadings was October 15, 2009. (Doc. No. 59 at 7.)

an extension must provide adequate explanation for the delay. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).

Once Predator has shown good cause for modifying the scheduling order, it must also satisfy the requirements of Rule 15(a) for amending the pleadings. Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a). The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Notably,

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson,* 355 U.S. 41, 48 (1957).

## ANALYSIS

*1.     Good Cause to Amend the Scheduling Order*

Predator seeks to amend the complaint to remove the patent infringement claim against Gamo USA and Gamo Spain because it has discovered that it cannot prove standing to pursue this claim. (Mot. at 2 (citing case law suggesting that a plaintiff who does not own sufficient rights in a patent lacks standing to sue for infringement).) Although the deadline to amend the

7

pleadings expired on October 15, 2009, and Predator did not file its motion to amend until May 14, 2010, the court finds that Predator has adequately explained the delay.

According to Predator, it did not discover that Mr. Phillips may still own an interest in the '893 Patent until around February 9, 2010. (Reply Ex. 1 at ¶ 5.) Predator attempted to negotiate an assignment of Mr. Phillips interests in the '893 Patent but, on February 27, 2010, Mr. Phillips advised that he would not sign the agreement. (*See id.* at ¶¶ 6-9.) That same day, Predator informed counsel for Gamo USA that it would have to dismiss the patent claim. (*Id.* at ¶ 8.) When Gamo USA did not concur in the dismissal, Predator filed its motion to dismiss. Predator also attempted to dismiss its patent infringement claim against Gamo Spain, before Gamo Spain answered, by notices dated March 2, 2010 and March 5, 2010. (*See* Doc. Nos. 111 & 116.)

Clearly, if Predator did not discover Mr. Phillips' claim to ownership in the '893 Patent until February 2010, it could not have moved to amend the complaint on this basis prior to the October 2009 deadline to amend the pleadings. Defendants suggest that Predator was not diligent in confirming the validity or enforceability of the '893 Patent or Mr. May's ownership interest in it. (Resp. at 3.) They point to the deposition testimony of Jay Cogswell, one of the current owners of Predator, who testified that he had an engineer, not an attorney, review the '893 Patent when he purchased it. (*Id.*) Defendants also note that Predator first amended its complaint on May 6, 2009 to acknowledge that both Mr. May and Mr. Phillips invented the airgun pellet. (*Id.* at 4.) They suggest that Predator was therefore "aware of Mr. Phillips' probable ownership interest in the '893 Patent" no later than May 6, 2009. (*Id.*)

8

Defendants have not provided any evidence to refute Mr. Cogswell's declaration that Predator was not aware until February 2010 that Mr. Phillips may still have an ownership interest in the '893 Patent. The fact that Mr. Phillips was a co-inventor of the airgun pellet does not establish a "probable ownership interest." In his declaration, Mr. Cogswell explains that Mr. May's representations and the Patent's history at the company, led the current owners of Predator to believe that they had purchased the '893 Patent from Mr. May. (*See* Reply Ex. 1 at ¶¶ 2-3.) The '893 Patent "had always been on Predator's books and Predator had never paid either Mr. May or Mr. Phillips any royalties." (*Id.* at ¶ 3.) Since 2002, Mr. Phillips had not had any involvement in the company and had not made, used, or sold any product covered by the '893 Patent." (*Id.*) He had not licensed the Patent to any other company and had not objected to Predator's use of or representations that it owned the '893 Patent. (*Id.*) In light of this history, the fact that Mr. Phillips was a co-inventor does not establish a "probable ownership interest."

The court does not consider the fact that Predator had an engineer, rather than an attorney, review the '893 Patent, a lack of diligence on Predator's part. Moreover, since Mr. Phillips refused to execute an assignment to clarify ownership of the '893 Patent, Predator has acted quickly. It advised counsel for Defendants of its desire to dismiss the patent infringement claim the same day, and attempted to dismiss the claim by filing notices of dismissal and a motion to dismiss within a week. Although Predator did not file a motion to amend the complaint until May 14, 2010, the court must acknowledge Predator's prompt filing of the motion to dismiss pursuant to Rule 41(a), which should be construed as a motion to amend. Accordingly, the court finds good cause to modify the scheduling order.

9

## 2. *Leave to Amend under Rule 15(a)*

The court must also consider whether amendment should be allowed under Rule 15(a). As described above, denial of a motion to amend is "generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank*, 3 F.3d at 1365.

Defendants do not oppose the removal of the patent infringement claim from Predator's complaint. However, they request a dismissal with prejudice; if the dismissal is without prejudice, Defendants request costs and fees. Accordingly, they cast their opposition to the motion to amend in terms of an argument for costs and fees. Although Defendants acknowledge that removal of the patent infringement claim is more appropriately addressed under Rule 15(a) (Resp. at 5-6), they rely on a provision of Rule 41(a) and supporting case law that allow a court to impose conditions on a voluntary dismissal as authority for an award of costs and fees, arguing that Rule 15(a) is the functional equivalent of a motion to dismiss under Rule 41(a)(2) (*id.* at 7-8).

After determining that Rule 15 is the appropriate vehicle for Predator's attempt to remove the patent infringement claim, it is unnecessary to resort to Rule 41 to evaluate whether costs and fees should be imposed. Rule 15 also provides authority to impose conditions, including costs and fees, when leave to amend is granted. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1486 (2010) (citing cases); *see also Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383, 1386 (10th Cir. 1980)

(recognizing that court has discretion to impose reasonable conditions on a grant of leave to amend); *Kronfeld v. First Jersey Nat'l Bank*, 638 F. Supp. 1454, 1460 (D.N.J. 1986) (granting leave to amend but ordering plaintiffs to pay cost of preparation of first answer when portions of original complaint were eliminated); *Etablissements Neyrpic v. Elmer C. Gardner, Inc.*, 175 F. Supp. 355, 358 (S.D. Tex. 1959) (allowing dismissal of certain claims in complaint with prejudice and noting that ordinarily, if a plaintiff wished to dismiss all claims, the motion would fall under Rule 41(a)(2) and the court should have the same discretion to impose conditions on the amendment as it would have upon voluntary dismissal under Rule 41(a)(2)). When deciding whether to impose conditions such as costs and fees on the grant of leave to amend the court considers the same factors that are relevant to determining whether leave should be granted, namely, undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of the amendment. *See Int'l Ass'n of Machinists and Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1391 (9th Cir. 1985); *see also Mountain View Pharmacy*, 630 F.2d at 1386 (noting that the proper procedure is to evaluate the proposed amendments under the standard for the applicable Federal Rule of Procedure)

In support of their request for costs and fees, Defendants argue that Predator has evidenced undue delay and bad faith or dilatory motive, has failed to cure deficiencies in previous amendments, and that allowing Predator to drop the patent infringement claim without prejudice would prejudice Defendants. (Resp. at 7.)

Defendants contend that Predator has exercised undue delay in seeking leave to amend. They urge that because Predator acknowledged Mr. Phillips as the co-inventor of the '893 Patent in its First Amended Complaint, filed on May 6, 2009, Predator was aware of Mr. Phillips' probable ownership interest in the '893 Patent no later than May 6, 2009. (*Id.* at 11-12.) Defendants insist that Predator has not explained why it took almost one year to discover the standing issue and file its motion to dismiss. (*Id.* at 12.) Similarly, Defendants contend that Predator failed to exercise due diligence and to conduct a reasonable inquiry into the facts supporting the patent infringement claim before filing this claim, as required by Rule 11.[3] (*Id.* at 13.) They also note that Predator did not amend the representation in its complaint that it was "the lawful assignee of the '893 Patent and now holds all right title and interest in the '893 Patent" despite previous opportunities to amend. (*Id.* at 12 & n.10.)

Predator has explained the delay in both its Motion to Dismiss and its reply in support of its Motion to Amend. (*See* Mot. Dismiss at 2; Reply at 2-3.) As explained above, in the absence of any evidence from Defendants to the contrary, the court finds Predator's explanation for the delay reasonable. In light of the representations of Mr. May and the history of the Patent at Predator, the court does not consider the fact that Mr. Phillips was co-inventor of the '893 Patent evidence of his ownership interest. Moreover, upon learning of Mr. Phillips' claim to ownership and unwillingness to execute an assignment to clarify ownership of the '893 Patent, Predator promptly took steps to notify counsel for Defendants and dismiss the patent infringement claim.

---

[3] Rule 11 contemplates that an attorney or unrepresented party makes a reasonably inquiry under the circumstances before filing a pleading with the court. *See* Fed. R. Civ. P. 11(b).

Accordingly, the court finds no undue delay, bad faith or dilatory motive that would prevent an amendment. Nor does Predator's failure to drop the patent infringement claim with any of the amendments made prior to discovery of the standing issue support a denial of the amendment.

Defendants' principal objection to a dismissal of the patent infringement claim without prejudice, and their basis for seeking costs and fees, is the prejudice they will suffer due to significant expenses they have incurred thus far in defending against the patent infringement claim. Defendants assert that defense counsel have performed prior art research and invalidity research, analyzed Predator's infringement claims with respect to the accused product, and completed the claim construction process, including extensive research and the preparation and filing of claim construction briefs. (Resp. at 9.) They have "initiated the elaborate and expensive process of obtaining discovery abroad from Predator's manufacturer via the Hague Convention" and expended significant time and expense preparing for patent issues in the depositions of Mr. Cogswell and Mr. Dixon. (*Id.* at 9-10.) Defendants note that Predator has every intention of refiling its patent infringement claim once it has resolved the ownership dispute with Mr. Phillips. (*Id.* at 10.) If Predator refiles, Defendants maintain that the deponents will need to be redeposed in order to further explore the patent facts and allegations, the claim construction briefing would need to be revisited, revised and refiled, and discovery would need to be redone and expanded. (*Id.*) They suggest that the court would have to bifurcate the matter and allow duplicative discovery. (*Id.*)

In sum, Defendants maintain that the purpose of a fee award is to compensate them for having incurred the expense of defending against the patent infringement claim without the

benefit of a final determination of the controversy. (*Id.* at 9.) They urge that costs and fees are warranted because the costs and fees associated with defending against the patent infringement claim were not part of the normal litigation process, and they would not have had to engage claim construction briefing absent that claim. (*Id.* at 8.) They argue that they should not be forced "to pay to defend the claim *again* when [they have] already expended hundreds of hours and tens of thousands of dollars defending the claim the first time." (*Id.* at 10 (emphasis in original).)

Predator paints a very different picture. It points out that Defendants have continued to pursue their counterclaims for noninfringement and patent invalidity and to undertake significant discovery in pursuit of these counterclaims. (Reply at 5.) Predator claims that the work undertaken in connection with the patent infringement claim would be useful and applicable to Defendants' counterclaims or a future patent infringement claim by Predator. Specifically, Predator contends that the prior art searching and invalidity research, analysis of patent infringement claims, written discovery, claim construction research, analysis and drafting, and deposition preparation is relevant to either a later-filed patent action or Defendants' counterclaims. (*Id.* at 6.) Predator argues that an award of fees as the result of the dismissal of an action is usually limited to fees for work that will not be useful in subsequent litigation. (*Id.* at 5.)

Moreover, while Predator admits that the case has involved four complaints and answers, multiple motions to dismiss, the production of over 5000 pages of documents, written discovery, briefing on Predator's motion for a preliminary injunction and numerous depositions, Predator

14

maintains that discovery related to the patent claim has been minimal. (*Id.* at 6-7.) In contrast to Defendants' general description of discovery, Predator sets forth a fairly detailed list of all patent-related discovery to date. (*See id.* at 7-9.) Predator also notes that much of this discovery has occurred since Defendants became aware of Predator's standing deficiencies and attempts to withdraw or remove the patent infringement claim. (*Id.* at 9.) For example, defense counsel took Mr. May's deposition on March 1, 2010 and Mr. Phillips' deposition on April 30, 2010 and, on May 18, 2010, filed a request for patent-related discovery under the Hague Convention. (*Id.* at 8-9.) According to Predator, Defendants have never sought a stay or extension of the discovery deadline on the patent claim.[4] (*Id.* at 10 n. 15.) Finally, Predator asserts that, because five of Predator's six claims will remain, Defendants would not be entitled to fees for appearing at scheduling conferences or drafting scheduling orders, which might be considered duplicative if the entire action were dismissed. (*Id.* at 6.)

In this case, the burden on Defendants' time and resources does not constitute sufficient prejudice to deny leave to amend, to require a dismissal with prejudice, or to support an award of costs and fees. Defendants have argued that if Predator's patent infringement claim is dismissed, their counterclaims for patent invalidity and noninfringement should remain pending for independent adjudication. (*See* Doc. No. 126 at 12-13.) The court agrees with Predator that much of the work and discovery related to Predator's patent infringement claim is useful and

---

[4] This is not entirely accurate. Defendants did not oppose Predator's motion to amend the scheduling order, in part to resolve "the uncertainty regarding the parties' patent-related claims." (Doc. No. 136 at 1.) Also, after Predator had filed its reply brief, the parties jointly moved for an extension of deadlines, noting that they needed a resolution regarding the dismissal of the patent-related claims in order to move forward with discovery. (Doc. No. 152 at 4.)

applicable to Defendants' counterclaims and to a later-filed patent infringement action, should Predator choose to pursue it. Defendants have not explained why deponents would have to be redeposed and the claim construction briefing "revisited, revised and refiled." The court considers that duplication, if any, in a subsequent action will be limited and the burden outweighed by the use of the patent-related work and discovery in the present action and in relation to Defendants' counterclaims.

Moreover, Defendants could have avoided some patent-related discovery expenses. The court granted two extensions of certain discovery deadlines so that the parties could obtain a ruling on the dismissal of the patent-related claims. (*See* Doc. Nos. 138 (granting Predator's unopposed motion to amend the scheduling order) & 158 (granting the parties' joint motion to extend deadlines).) Defendants have not explained why they undertook patent-related discovery after learning of the standing issue and Predator's efforts to dismiss the patent infringement claim, when the court had extended the discovery deadlines.

Finally, both parties agree that Predator's patent infringement claim must be dismissed, either by amendment of the complaint or on a motion to dismiss for lack of standing by Defendants. (*See* Resp. at 14-15; Reply at 1.) A dismissal for lack of standing is not an adjudication on the merits and should be without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006). The court is unwilling to require Predator to dismiss the patent infringement claim with prejudice only because Predator proactively sought to amend its complaint, when a dismissal on motion by Defendants would be without prejudice.

16

In sum, the court finds that Predator's motion for leave to amend should be granted and Predator should be allowed to dismiss the patent infringement claim without prejudice. The court also finds that an award of costs and attorney's fees is not merited under the circumstances of this case.

It is therefore **ORDERED** that "Plaintiff's Motion to Amend Third Amended Complaint Under Fed. R. Civ. P. 15(a)(2) to Remove Patent Infringement Claims," (Doc. No. 142) is GRANTED; it is further

**ORDERED** that the Clerk shall file Plaintiff's Fourth Amended Complaint and Demand for Jury Trial (Doc. No. 142-3); it is further

**ORDERED** that Defendants shall answer or otherwise respond to Plaintiff's Fourth Amended Complaint no later than September 23, 2010.

Dated this 9th day of September, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge