IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-00970-PAB-KMT

PREDATOR INTERNATIONAL, INC., a Colorado corporation,

      Plaintiff,

v.

GAMO OUTDOOR USA, INC., a Florida corporation, and
INDUSTRIAS EL GAMO, S.A., a Spanish corporation,

      Defendants.

---

## ORDER

---

      This matter is before the Court on the motions for summary judgment filed by

defendants Gamo Outdoor USA, Inc. ("Gamo USA") [Docket No. 182] and Industrias El

Gamo, S.A. ("Gamo Spain") [Docket No. 183].  The motions are fully briefed and ripe

for disposition.

## I. BACKGROUND[1]

      Plaintiff Predator International, Inc. ("Predator") began selling airgun pellets with

a red polymer tip called "Predator Premium Hunting Pellets" in 2002.  Lee Phillips and

Tom May developed the pellets starting in the late 1990s.  They created the prototypes

by taking red polymer tips off of live ammunition sold by other companies and inserting

---

[1]The following facts are derived from defendants' Statements of Undisputed
Material Facts and plaintiff's responses thereto.  Plaintiff did not include a Statement of
Additional Disputed Facts in its response briefs, which this Court's Practice Standards
require when a party believes that additional facts should be considered.  Defendants
pointed this out in their respective reply briefs, and plaintiff has not sought leave to
identify any additional disputed facts.

them onto lead pellet bodies.  From 2002 until 2006, Predator sold less than $300,000 worth of the pellets, never realizing a profit during that time period.  In 2007, Jay Cogswell and Dick Dixon purchased Predator and began selling the pellets under the name POLYMAG.  The new owners also changed the color of the tin in which the pellets were sold from green and white to black and white.  Under the new ownership, the sale of POLYMAGs increased.

In 2009, Gamo USA, a Predator competitor in the airgun pellet market, introduced the RED FIRE, an airgun pellet with a red polymer tip.  Gamo USA contends that it chose red "in order to coincide with its red corporate logo."  Docket No. 182 at 5, ¶ 25.  Predator disputes this, though does not dispute that the color red is "a major component of the Gamo brand."  Docket No. 182 at 5, ¶ 25; Docket No. 198 at 7, ¶ 25. Gamo avers that the "red used in the RED FIRE tip is visibly distinguishable from the shade of red used in the POLYMAG tip," and that the "RED FIRE red is 'a bit more translucent.'" Docket No. 182 at 5, ¶ 26.  Predator responds by asserting that "[t]hey are both red, period" but does not specifically deny that the reds are visible distinguishable. Docket No. 198 at 7, ¶ 26 ("How different the reds are is a question of fact for the jury.").

Both RED FIRE and POLYMAG pellets are sold in large retail sporting goods stores.  They are not sold in bulk, but rather in individual unit packages.  Each company packages its product differently.  POLYMAG pellets are sold in a metal tin which has a black and white label that prominently says "Predator POLYMAG."  When viewing the package, the POLYMAG pellets are not visible inside the tin, and the tins are stacked when sold in stores.  RED FIRE pellets are sold in a clear plastic tin, which reveals the

2

pellets inside.  The RED FIRE tin is shrink wrapped onto a cardboard backing which allows the package to be hung for purposes of display.  "Gamo RED FIRE" along with the Gamo logo and a depiction of flames are prominently displayed on the cardboard backing.

Purchasers of polymer tipped airgun pellets are more sophisticated consumers than consumers of non-polymer tipped pellets and take greater care when buying polymer tipped pellets.  *See* Docket No. 198 at 9, ¶ 49 & 10, ¶ 53.  RED FIRE and POLYMAG pellets are at the high-end of airgun pellets, and their consumers consider them to be premium products.

In 2005, Predator spent $14,860.42 advertising POLYMAG pellets, followed by $10,964.60 in advertising expenditures in 2006.  From January 1, 2007 to July 13, 2009, Predator spent $20,000 advertising all of its products, including the POLYMAG.  POLYMAG advertisements have appeared in two trade magazines, *Predator Xtreme* and *Fur-Fish-Game*, and have consisted of one advertisement design used in both magazines.  This advertisement does not reference the color of the polymer tip.  The advertisement, however, does include an image of the POLYMAG against a red and black background.  *See* Docket No. 182-3 at 1.  In addition to this paid advertising, Predator includes a description of the POLYMAG pellets on its website.  During the times relevant to this case, Gamo USA copied this description nearly word for word in describing the RED FIRE.

In regard to Gamo Spain's involvement in the aforementioned sale and marketing of RED FIRE pellets, Gamo Spain sells the RED FIRE pellets to Gamo USA for sale in the United States.  Predator admits that Gamo Spain, which is a distinct legal

entity from Gamo USA, does not direct Gamo USA's marketing of RED FIRE pellets in the U.S.  Gamo Spain was not involved in the decisions surrounding RED FIRE's U.S. packaging and product description.  Nor is there evidence that Gamo Spain was involved in the decision to use red polymer tips on the RED FIRE.

Predator initiated this action against defendants on April 28, 2009.  Predator alleges that defendants are infringing Predator's protected trade dress in the color of the POLYMAG's polymer tip[2] and infringed Predator's copyright in the language used to describe the POLYMAG pellets.  Predator has also asserted Colorado Consumer Protection Act, unjust enrichment, and unfair competition claims arising under Colorado state law.  Defendants seek summary judgment on all of Predator's claims.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and

---

[2]Predator does not seek trade dress protection for any other feature of its pellets and admits that "[c]onsumers identify the POLYMAG product based on the numerous combined features of the product, and not solely on the red tip."  Docket No. 182 at 10, ¶ 58; Docket No. 198 at 10, ¶ 58.

preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198

(10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a

reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119

F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a

court must view the evidence in the light most favorable to the non-moving party. *Id.*;

*see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III.  DISCUSSION

### A.  Gamo USA's Motion for Summary Judgment

#### _____1.  *Trade Dress*

Plaintiff's trade dress claim arises out of Section 43(a) of the Lanham Act. *See*

15 U.S.C. § 1125(a). "Under § 43(a) of the Lanham Act, a plaintiff has a cause of action

against any person whose use of a word, symbol or device is likely to cause confusion

regarding the source or origin of the plaintiff's goods." *Sally Beauty Co., Inc. v.

Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002) (citing 15 U.S.C. § 1125(a)(1)(A);

*Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000)). A product's trade

dress consists of its "overall image and appearance, and may include features such as

size, shape, color or color combinations, texture, graphics, and even particular sales

techniques." *Id.* (citation omitted). To ultimately succeed on its trade dress claim,

Predator must demonstrate the following: "(1) The trade dress is inherently distinctive or

has become distinctive through secondary meaning; (2) There is a likelihood of

confusion among consumers as to the source of the competing products; and (3) The

trade dress is nonfunctional." *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d

1222, 1227 (10th Cir. 2007) (citations omitted); *see* 15 U.S.C. § 1125(a).

Predator seeks trade dress protection for the red color of the POLYMAG's polymer tip and for no other feature or combination of features of its pellets.  Docket No. 182 at 2, ¶ 1; Docket No. 198 at 3, ¶ 1; *see Vornado Air Circulation Sys. v. Duracraft Corp.*, 58 F.3d 1498, 1502 (10th Cir. 1995) ("[T]rade dress analysis may be applied to a single feature or a combination of features."); 1 *McCarthy on Trademarks and Unfair Competition* ("*McCarthy on Trademarks*") § 8:1, 8:3 (4th ed.) ("While trade dress is most often defined as a totality of elements, there is no reason why the plaintiff cannot define a list of elements consisting of less than the totality of features appearing on a package or container.").  Predator admits that the color red is not inherently distinctive, *see Wal-Mart Stores, Inc. v. Samara Bros. Inc.*, 529 U.S. 205, 212 (2000) ("design, like color, is not inherently distinctive"), but argues that its use of red has acquired secondary meaning in the airgun pellet market.  "[O]ver time, customers may come to treat a particular color on a product or its packaging . . . as signifying a brand." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163 (1995).

"A plaintiff may establish secondary meaning 'through the use of direct evidence, such as consumer surveys or testimony from consumers.'"  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1218 (10th Cir. 2004) (citation omitted).  A plaintiff may also rely upon "'circumstantial evidence regarding: (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture.'" *Id.* (citations omitted).  Here,

Predator relies on circumstantial evidence.  *See* Docket No. 198 at 12.

Predator asserts that a jury could find that the red color of the POLYMAG's tip has attained secondary meaning by relying on evidence that it "has taken significant steps to promote the distinctive red colored tip featured on the POLYMAG."  Docket No. 198 at 12.  The only evidence Predator identifies in support of this contention is that the pellet's advertisement and Predator employees' business cards contain a color photograph of the pellet.  Predator fails to explain how this demonstrates that it promoted the tip's color as an identifying mark.  *See* 1 *McCarthy on Trademarks* § 8:8 ("[S]econdary meaning cannot usually be proven by advertising that merely pictures the claimed trade dress and does nothing to emphasize it or call attention to it.") (footnotes omitted); *cf. Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 703 F. Supp. 2d 671, 690 (W.D. Ky. 2010) (concluding that plaintiff's packaging its product with a "red dripping wax seal [was] inherently distinctive" and noting that plaintiff's expenditure of "$22 million annually on marketing that focuses almost entirely on branding the red dripping wax" "enhanced its distinctiveness").[3]  Predator identifies no evidence that its advertising drew any particular attention to the color of the pellet's tip.  *See In re Owens Corning Fiberglas Corp.*, 774 F.2d 1116, 1126-27 (Fed. Cir. 1985) (concluding that the color pink had attained secondary meaning in the context of fiberglass insulation based on $42,000,000 in advertising which included slogans such as "'Pink of Perfection'; 'The Pink Cooler'; 'Big Pink'; 'Love that Pink'; 'Pink Power'; 'America's Favorite Pink Product'; 'Tickled Pink'; 'Put your House in the Pink'; 'Up with Pink'; 'Prime Time Pink'; 'Think

---

[3]As noted above, Predator limits its trade dress to the color red.

7

Pink'; 'Think More Pink'; 'Beat the Cold with Pink'; 'All that Pink'; and 'Plant Some Pink Insulation in your Attic'"); *see also Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 44 (1st Cir. 2001) (affirming the district court's finding that the "advertising did not emphasize any particular element of its trade dress, and thus could not be probative of secondary meaning); *Montblanc-Simplo v. Aurora Due S.r.L.*, 363 F. Supp. 2d 467, 479 (E.D.N.Y. 2005) ("In order for Montblanc's advertising expenditures to be relevant to the strength of the decoband mark, the advertising must call attention to the decoband mark.").

Predator has also failed to identify any evidence that, during the seven years it exclusively used red tips on airgun pellets,[4] consumers nevertheless drew an association between the color red and the POLYMAG.  *See Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F. Supp. 1454, 1470 (D. Kan. 1996) ("Given the Tenth Circuit's definition of secondary meaning in *Vornado* . . . this court concludes that '[t]he critical question in considering the evidence is not the extent of the promotional efforts but their effectiveness in creating an association' between the trade dress and plaintiff")

--------

[4]Predator cites the "close to $900,000 in sales during the seven years in which Predator exclusively" sold a red-tipped airgun pellet.  Docket No. 198 at 13; *see* Docket No. 198 at 15.  "The Tenth Circuit has also indicated that duration of exclusive use of a mark may establish secondary meaning."  *First Fidelity Bank, N.A. v. Fidelity Bank*, 2006 WL 6884605, at *4 (W.D. Okla. April 18, 2006).  However, "'[t]o acquire secondary meaning, a descriptive mark must have been used so long and so *exclusively* by one producer with reference to his goods' that it has acquired distinctiveness."  *Sally Beauty*, 304 F.3d at 978 n.4 (quoting *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1470 (10th Cir.1985)) (emphasis in original).  The record contains no evidence upon which a jury could conclude that the seven years of use here resulted in the acquisition of distinctiveness.  *Cf. In re Owens Corning Fiberglas Corp.*, 774 F.2d 1116, 1125 (Fed. Cir. 1985) (considering, among other factors, the exclusive use of the color pink since 1956 along with emphasis on that color in the $ 42,000,000 spent marketing the product).

(citation omitted).  Predator cites comments on "blog posts, product comments, and unsolicited media attention."  Docket No. 198 at 12.  This evidence, however, does not support the conclusion that the red tip has acquired secondary meaning.  For example, Predator cites an article in *Varmint Hunter* magazine which contains a single reference to the "red polymer tip" of the POLYMAG.  *See* Docket No. 198 at 12, n.29 (citing Docket No. 9-8 at 2).[5]  However, the article proceeded to distinguish the pellet from others based on its functional capacity and does nothing, in regard to the color of the polymer tip, to "promote an association between product and source." 1 *McCarthy on Trademarks* § 8:8; *see* Docket No. 9-8 at 2 ("This sounds like another pointed pellet, but there is one significant difference.  The Predator gives near target accuracy in most airguns that I have used them in.  It is not just a clever design, it is a clever design that performs extremely well.").  Predator also relies upon videos depicting the POLYMAG and comments thereto which were posted by consumers on YouTube.com.  *See* Docket Nos. 40-2, 40-3.  The comments and video make only passing mention of the red tip and, to the extent they distinguish POLYMAGs from other pellets, the focus is on their relative performance and not their appearance.  Predator also cites various consumer comments about the overall appearance of the pellets.  *See* Docket No. 40-15.  These comments, however, do not include any indication that consumers see the color of the polymer tip as a source identifier.

Predator contends that a jury could consider "that Gamo intentionally copied

---

[5] Predator cites Ex. 7 to its motion for preliminary injunction as appearing in the docket at Docket No. 9-9.  The Electronic Case Filing numbering system has been changed since the filing of plaintiff's motion.  Exhibit 7 now appears at Docket No. 9-8. The Court will cite the current docket numbers.

Predator's trade dress," Docket No. 198 at 13, noting that the Tenth Circuit has stated

that "'proof of intentional copying' is an indication that Predator's trade dress has

acquired secondary meaning." *Id.* at 13-14 (quoting *Sally Beauty*, 304 F.3d at 978).  In

*Marker Int'l v. DeBruler*, 844 F.2d 763 (10th Cir. 1988), the Tenth Circuit concluded that

defendant's intentional copying of plaintiff's trademark was sufficient to establish

secondary meaning where the defendant in *Marker Int'l* "stated that he continued to use

[the disputed mark] because [plaintiff] had a reputation for quality products and he

believed people might associate that reputation with" defendant's products.  844 F.2d at

764.  The Tenth Circuit deemed this an admission by defendant that plaintiff's mark had

achieved secondary meaning.  *Id.*   Even assuming intentional copying, there is little

support for the proposition that copying alone, regardless of the reason for such

copying, would be sufficient to establish secondary meaning.  *See Winning Ways*, 913

F. Supp. at 1472 ("The court finds as a factual determination that Holloway copied the

Clipper and Victory to take advantage of those jackets' popular styles and not their

source identification."); *see also Continental Laboratory Products, Inc. v. Medax Int'l,

Inc.*, 114 F. Supp. 2d 992, 1010 (S.D. Cal. 2000) ("[M]any courts have refused to infer

secondary meaning from mere intentional copying.  Instead, intentional copying

supports a finding of secondary meaning only where the defendant intended to confuse

consumers and pass off its product as the plaintiff's.").[6]  As the court in *Continental*

---

[6]*Continental Laboratory Products*, 114 F. Supp. 2d at 1010 n.14 ("[F]ederal
courts have refused to infer secondary meaning from deliberate copying of a product
design where the defendant uses a different packaging design or conspicuously
displays its own trademarks.  The principle behind these cases is that a court should
not infer that the defendant intended to deceive consumers where it made deliberate
efforts to prevent source confusion.") (citations omitted).

*Laboratory Products* noted, "[t]o derive secondary meaning from deliberate copying, the court must forge a circular chain of inferences: (1) the plaintiff's product mark or design has secondary meaning; (2) the defendant knew about this secondary meaning; (3) the defendant copied the mark or design to exploit this secondary meaning and confuse consumers; and (4) thus the mark or design has secondary meaning."  114 F. Supp. 2d at 1009.  "The first and second assumptions require a court to assume the plaintiff's product has secondary meaning," but "[b]oth assumptions collapse where, as here, the plaintiff offers no independent evidence of secondary meaning."  *Id.*

In sum, although Predator correctly points out that "[w]hether a trade dress has acquired secondary meaning is a question of fact and thus generally should not be decided at the summary judgment stage," *Sally Beauty*, 304 F.3d at 978 (citations and quotations omitted), a factfinder must nevertheless have sufficient evidence upon which to base a ruling in plaintiff's favor in order to survive summary judgment.  Here, the evidence at most shows that Predator exclusively used red tips for a period of time and that Gamo USA then copied the red tip.  That is not evidence of secondary meaning.

Although evidence relevant to secondary meaning and likelihood of confusion will often overlap, *see* 2 *McCarthy on Trademarks* § 15:11, they are distinct legal elements.  Without a showing of secondary meaning, there is no trade dress protection and the analysis need not proceed to address likelihood of confusion.  *See B & B Hardware, Inc. v. Hargis Industries, Inc.*, 569 F.3d 383, 389 (8th Cir. 2009) ("In the prior action, the jury determined only that B & B's mark was descriptive and had not obtained a secondary meaning.  With this determination, there was no need to address the

second element of a trademark infringement claim – whether there was a likelihood of confusion between the two marks."); *Boston Beer Co. Ltd. Partnership v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175, 183 (1st Cir. 1993) ("The district court found that appellant's marks were not entitled to trademark protection because they had not attained secondary meaning.  Accordingly, that court did not need to address the question of likelihood of confusion."); *Thompson Medical Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) ("If the district court rules that [the term] has not acquired secondary meaning, the mark cannot be protected and the inquiry properly concludes."); *see also Storck USA, L.P. v. Farley Candy Co., Inc.*, 797 F. Supp. 1399, 1410 n.11 (N.D. Ill. 1992).  Because there is no evidence of secondary meaning, the Court will grant summary judgment to Gamo USA on Predator's trade dress claim.

### 2.  Copyright

Predator asserts a copyright infringement claim against Gamo USA pursuant to the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.*  To establish a claim for copyright infringement, Predator must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991).

Predator registered language found on its website with the Copyright Office.  *See* Docket No. 182-8.  Predator's website informs readers that the POLYMAG "was designed specifically to be the most effective and efficient airgun hunting ammunition available."  Docket No. 182-8 at 2.  The website further describes the pellet as follows:

> Experience better accuracy, deeper penetration and higher velocity with Predator's revolutionary new hunting Polymags™ (polymer tip pellet).

> Hollow point design creates instant expansion on impact allowing for the taking of larger animals.  Hard polymer tip provides excellent flight characteristics.

*Id.* at 3.  The website also included the following description:

> The Predator Polymag™ (polymer tip pellet) features a traditional hollow point design in a standard airgun application.  The aerodynamic shape and hard polymer tip provide excellent flight  characteristics.  Other features include:
> - Higher Velocity & Flat Trajectory
> - Very Accurate and Efficient
> - Allows for Deeper Penetration
> - Instant Expansion on Impact
> - Light Weight (.177 cal weighs 8gr, .22 weighs 16 gr)

*Id.* at 4.

Upon introduction of the RED FIRE, Gamo USA also contended that its pellet was "designed specifically to be the most effective and efficient air gun hunting ammunition available."  Docket No. 9-9 at 2.[7]  Gamo USA described its pellet, in pertinent part, as follows:

> You will experience better accuracy, deeper penetration and higher velocity with these revolutionary new hunting polymer tipped pellets.  The hollow point design creates instant expansion on impact allowing for the taking of larger animals.  The hard polymer tip provides excellent flight characteristics as well. . . .

*Id.*  Gamo USA listed the RED FIRE's specifications as follows:

> Higher Velocity & Flat Trajectory
> Accurate and Efficient
> Allows for Deeper Penetration
> Instant Expansion on Impact
> Light Weight

---

[7]This exhibit was admitted during a hearing on plaintiff's motion for preliminary injunction [Docket No. 9].  *Cf.* Fed. R. Civ. P. 65(a)(2) ("[E]vidence that is received on the motion [for preliminary injunction] and that would be admissible at trial becomes part of the trial record and need not be repeated at trial.").

.177 cal weighs 8gr, .22 weighs 16 gr

*Id.*

As the foregoing makes clear, Gamo USA used the same language to describe the RED FIRE's features as Predator had previously used to describe the POLYMAG. Gamo USA contends, however, that the language is not subject to copyright protection pursuant to the merger doctrine. "[W]hen 'a given idea is inseparably tied to a particular expression,' the convention is that there is 'merger' between the two." *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1144 (10th Cir. 2009) (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03(B)(3), at 13-86.). The doctrine serves to prevent courts from "unwittingly grant[ing] protection to an idea by granting exclusive rights to the only, or one of only a few, means of expressing that idea." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993) (citation omitted); *see Health Grades, Inc. v. Robert Wood Johnson University Hosp., Inc.*, 634 F. Supp. 2d 1226, 1235 (D. Colo. 2009) ("This doctrine arises from the rule that copyright protection extends only to the author's original expression, and not to the ideas embodied in that expression."); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.").

This case is distinguishable from those upon which Gamo USA relies, where, for example, courts found that language used to outline instructions merged with the content of the instructions themselves. *See* Docket No. 182 at 26 (citing *Allen v.*

*Academic Games League of America, Inc.*, 89 F.3d 614, 617-18 (9th Cir. 1996);

*Morrissey v. Procter & Gamble Co.*, 379 F.2d 675 (1st Cir. 1967).  Here, Gamo USA

has supplied other manufacturers' descriptions of similar qualities in their respective

ammunition in support of the contention that the language at issue here merged with

the ideas expressed.  The examples, however, only serve to highlight the various ways

manufacturers have found to describe certain features of their products.  *See, e.g.*,

Docket No. 182-31 at 6 ("Streamlined for ultra-flat trajectories"); *id.* at 10 (describing

ammunition that "gives hunters the incredible speed and downrange energy they're

looking for" and results in "dramatic wound channels"); *id.* at 12 ("explosive expansion");

*id.* at 14 ("It delivers precision accuracy, awesome knockdown power, and deep

penetration all in one package . . . ."); *id.* at 15 ("Pinpoint accuracy"); *id.* at 16

(describing "match-grade accuracy with all the performance characteristics serious

varminters are looking for"); *id.* at 22 ("Mushroom expansion maximizes energy

transfer").  In fact, Gamo USA no longer uses the language at issue to describe the

RED FIRE.  *See* Docket No. 198-5 at 8 (describing the RED FIRE as an "advanced

pellet . . . designed with a diamond shaped polymer tip that provides a true ballistic

trajectory" that is "engineered for balanced expansion ensuring intense penetration");

*see id.* ("• Exceptional Accuracy • Intense Penetration • Uniformed Expansion").   These

descriptions are "unlike instructions because the[y] . . . [do] not merely delineate the

steps of an established process.  Instead, each manufacturer has chosen different

language and word order to emphasize or de-emphasize various aspects of the[ir]

[products]." *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 635 F. Supp. 2d 632,

640 (E.D. Mich. 2008).[8]  On the present record, the Court cannot conclude that the language at issue completely merges with all of the ideas expressed therein as a matter of law.  *See MDM Group Associates, Inc. v. ResortQuest Int'l, Inc.*, No. 06-cv-01518-PSF-KLM, 2007 WL 2909408, at *4 (D. Colo. Oct. 1, 2007) ("[I]n this case MDM claims a copyright not in the legal concepts of 'Acts of God' or 'Normal wear and tear,' but in the general organization and presentation of the damage waiver program, which includes those conditions.  The Court holds that, at this stage of the proceedings, ResortQuest has not demonstrated as a matter of law that the number of ways in which the damage waiver program can be expressed is 'so few as to represent a merger with the underlying idea.'").  The Court will therefore deny Gamo USA's request for summary judgment on Predator's copyright claim.

### 3.  State Law Claims

_____Predator has also asserted Colorado Consumer Protection Act ("CCPA"), unjust enrichment, and unfair competition claims against Gamo USA.

Predator's unjust enrichment claim rests solely on the allegations of trade dress

---

[8]*Innovation Ventures*, 635 F. Supp. 2d at 640 (citation omitted):
In this case, there is evidence that the idea is capable of various modes of expression.   Defendants attached pictures of the medical caution statements published on other energy shot labels.  Although the medical caution statements are substantially similar, in that they all express the same basic facts, the statements are not identical.  Indeed, the word choice and word order differs among the labels.  These differences indicate that the idea and expression have not merged and that there is not a standard way of expressing the idea, such that the "scenes a faire" doctrine would apply.

infringement.  *See* Docket No. 161 at 10, ¶¶ 61, 63.[9]  Because the Court will grant

Gamo USA summary judgment on Predator's trade dress claim, the Court will also

grant Gamo USA summary judgment on Predator's unjust enrichment claim.

As to its unfair competition claim, Predator "concedes that to the extent its unfair

competition claim is based upon the improper use of copyrighted material, as opposed

to infringement of trade dress, it has already been dismissed."  Docket No. 255 at 4

(citing Docket No. 238).  Predator's unfair competition claim is therefore limited to its

allegations of trade dress infringement.  *See HealthONE of Denver, Inc. v. UnitedHealth*

*Group Inc.*, No. 10-cv-01633-WYD-BNB, 2011 WL 1135015, at *6 (D. Colo. Mar. 28,

2011) ("The common law tort of unfair competition . . . protects against 'copying of

nonfunctional aspects of consumer products which have acquired secondary meaning

such that they operate as a designation of source.'") (quoting *Bonito Boats v. Thunder*

*Craft Boats*, 489 U.S. 141,158 (1989)).  As noted above, there is no evidence that the

red tip of the POLYMAG has acquired secondary meaning.  Therefore, the Court will

also grant summary judgment on Predator's unfair competition claim.

In seeking summary judgment on the CCPA claim, Gamo USA simply relies on

its arguments supporting summary judgment on the trade dress and copyright claims.

Therefore, the Court will deny Gamo USA's request for summary judgment on the

CCPA claim to the extent that claim relies on alleged copyright infringement.

---

[9]As the Court noted in ruling on defendants' motion to dismiss the state law claims, Predator has "disavow[ed] its unjust enrichment claim being based on copyright infringement."  Docket No. 238 at 8.

### B.  Gamo Spain's Motion for Summary Judgment

_____For the foregoing reasons, Gamo Spain is entitled to summary judgment on

Predator's trade dress, unjust enrichment, and unfair competition claims.  The question

becomes whether Gamo Spain is entitled to summary judgment on Predator's

Copyright Act and CCPA claims.

Predator contends that, because Gamo Spain, a foreign company, sells Red Fire

pellets to Gamo USA, it can be held liable for copyright infringement.  "It is well

established that copyright laws generally do not have extraterritorial application."

*Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988).  Predator,

however, contends that Gamo Spain can be held liable pursuant to § 602(a)(1) of the

Copyright Act, which provides that "[i]mportation into the United States, without the

authority of the owner of copyright under this title, of copies . . . of a work that have

been acquired outside the United States is an infringement of the exclusive right to

distribute copies . . . under section 106, actionable under section 501."  17 U.S.C.

§ 602(a)(1).  Predator argues that Gamo Spain imports and sells infringing products

through Gamo USA, which is simply a "strawman" for Gamo Spain.  *See* Docket No.

205 at 25.  Predator, however, identifies no evidence in support of that argument.  As

the record stands, it is Gamo USA that imports and sells RED FIRE pellets in the U.S.

Furthermore, even assuming the sale of these products to an American

company was sufficient to support liability,[10] Predator admits that Gamo Spain is a

_____

[10]*Cf. Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1099 (9th Cir. 1994) ("[T]he mere authorization of acts of infringement that are not cognizable under the United States copyright laws because they occur entirely outside of the United States does not state a claim for infringement under the Copyright Act.")

18

distinct legal entity from Gamo USA and does not direct Gamo USA's sale and marketing of RED FIRE pellets in the United States.  Therefore, there is no indication that Gamo Spain was involved in the decision to use any particular language in Gamo USA's promotional materials in the United States.  For these reasons, the Court will grant summary judgment to Gamo Spain on Predator's copyright infringement claim.

In order to establish a CCPA claim, Predator must show, *inter alia*, that it "suffered injury in fact to a legally protected interest."  *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).  The only two legally protected interests identified by Predator were trade dress and copyright.  For the foregoing reasons, the record is devoid of evidence sufficient to support either theory of recovery against Gamo Spain.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the motion for summary judgment filed by defendant Gamo USA [Docket No. 182] is GRANTED in part and DENIED in part.  Upon entry of final judgment in this case, judgment shall enter in favor of Gamo USA and against Predator on Predator's claim for trade dress infringement and state law claims for unjust enrichment and unfair competition.  It is further

**ORDERED** that the motion for summary judgment filed by Gamo Spain [Docket No. 183] is GRANTED and Gamo Spain shall be dismissed from this action.  Upon entry of final judgment in this case, judgment shall enter in favor of Gamo Spain and against Predator on all of Predator's claims.

DATED March 26, 2012.

BY THE COURT:

s/Philip A. Brimmer
_____
PHILIP A. BRIMMER
United States District Judge