IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-00970-PAB-KMT

PREDATOR INTERNATIONAL, INC., a Colorado corporation,

     Plaintiff,

v.

GAMO OUTDOOR USA, INC., a Florida corporation,

     Defendant.

---

## ORDER OF DISMISSAL

---

     This matter is before the Court on plaintiff's response [Docket No. 310] to that portion of the Court's June 5, 2012 order to show cause [Docket No. 308] that ordered plaintiff Predator International, Inc. ("Predator") to show cause why its copyright claim should not be dismissed as moot.

     Predator sells airgun pellets with red polymer tips under the name POLYMAG. Defendant Gamo Outdoor USA, Inc. ("Gamo USA"), a Predator competitor in the airgun pellet market, sells the RED FIRE, an airgun pellet that also has red polymer tips. Predator initiated this action on April 28, 2009, alleging that Gamo USA and former defendant Industrias El Gamo, S.A. ("Gamo Spain") were infringing Predator's protected trade dress in the color of the POLYMAG's polymer tip and infringed Predator's copyright in the language used to describe the POLYMAG pellets in advertisements and on its website.  Pursuant to Colorado law, Predator also asserted unjust enrichment and unfair competition claims, as well as a claim pursuant to the

Colorado Consumer Protection Act ("CCPA"), *see* Colo. Rev. Stat. § 6-1-101 *et seq.*
On March 26, 2012, the Court granted summary judgment to both defendants on
Predator's claim for trade dress infringement and state law claims for unjust enrichment
and unfair competition.  The Court further granted summary judgment to Gamo Spain
on plaintiff's remaining copyright infringement and CCPA claims.  The only remaining
claims are plaintiff's copyright claim against Gamo USA and its CCPA claim to the
extent it is based upon the alleged copyright infringement.

Predator registered language found on its website with the Copyright Office.  *See*
Docket No. 182-8.  Predator's website informs readers that the POLYMAG "was
designed specifically to be the most effective and efficient airgun hunting ammunition
available."  Docket No. 182-8 at 2.  The website further describes the pellet as follows:

> Experience better accuracy, deeper penetration and higher velocity with
> Predator's revolutionary new hunting Polymags™ (polymer tip pellet).
> Hollow point design creates instant expansion on impact allowing for the
> taking of larger animals.  Hard polymer tip provides excellent flight
> characteristics.

*Id.* at 3.  The website also included the following description:

> The Predator Polymag™ (polymer tip pellet) features a traditional hollow
> point design in a standard airgun application.  The aerodynamic shape
> and hard polymer tip provide excellent flight  characteristics.   Other
> features include:
> - Higher Velocity & Flat Trajectory
> - Very Accurate and Efficient
> - Allows for Deeper Penetration
> - Instant Expansion on Impact
> - Light Weight (.177 cal weighs 8gr, .22 weighs 16 gr)

*Id.* at 4.

Upon introduction of the RED FIRE, Gamo USA also advertised that its pellet
was "designed specifically to be the most effective and efficient air gun hunting

ammunition available."  Docket No. 9-9 at 2.  Gamo USA described its pellet, in

pertinent part, as follows:

> You will experience better accuracy, deeper penetration and higher velocity
> with these revolutionary new hunting polymer tipped pellets.  The hollow
> point design creates instant expansion on impact allowing for the taking of
> larger animals.   The hard polymer tip provides excellent flight
> characteristics as well. . . .

*Id.*  Gamo USA listed the RED FIRE's specifications as follows:

> Higher Velocity & Flat Trajectory
> Accurate and Efficient
> Allows for Deeper Penetration
> Instant Expansion on Impact
> Light Weight
> .177 cal weighs 8gr, .22 weighs 16 gr

*Id.*  Based upon the foregoing, the Court denied Gamo USA's request for summary

judgment on Predator's copyright claim.

If a plaintiff establishes its copyright claim, it may seek to recover "actual

damages suffered by him or her as a result of the infringement, and any profits of the

infringer that are attributable to the infringement and are not taken into account in

computing the actual damages."  *See* 17 U.S.C. § 504(b).  Gamo USA averred that

Predator had not "establish[ed] any evidence of damages resulting from the alleged

copyright infringement."  Docket No. 214 at 20.  The Court ordered Predator to show

cause whether there was any evidence supporting a damages award on its copyright

claim.  In its response, Predator asserts that it still seeks actual damages.  Therefore,

the Court will not find that the copyright claim is moot.  Gamo USA, however, contends

that Predator has failed to identify any evidence of actual damages and, therefore, that

Gamo USA is entitled to summary judgment on Predator's copyright claim.  The Court

agrees.[1]

Predator identifies various theories and methods for measuring actual damages. For example, Predator seeks to recover Gamo USA's $2.7 million of gross revenues from sales of the RED FIRE pellet as well as another polymer-tipped pellet called Performance.  *See* 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.").  As Gamo USA points out, however, Predator identifies no evidence that any of Gamo USA's revenues are "attributable to the infringement."  17 U.S.C. § 504(b).  Rather, Predator simply requests the entirety of Gamo USA's polymer-tipped pellet revenues without any indication that they resulted from the copyright infringement.  Plaintiff, however, must identify at least some evidentiary basis for believing that defendant's sales were, at least in part, attributable to copyright infringement.  *See University of Colorado Foundation, Inc. v. American Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999) ("The University argues that its proof of Cyanamid's gross revenues from sales of reformulated Materna shifted the burden of proof to Cyanamid under 17 U.S.C. § 504(b) (1994) to prove deductible expenses and to prove those elements of its profits that were attributable to factors

---

[1]The Court ordered Predator to address whether its copyright claim was moot. Predator was on notice that, if it contended there was still a dispute over damages, the sufficiency of the evidence of damages might implicate Fed. R. Civ. P. 56.  Predator knew that Gamo USA believed the issue was ripe for summary judgment, *see* Docket No. 314 at 3; *see also* Docket No. 214 at 20, and has since attempted to identify evidence sufficient to justify the Court allowing its claim to proceed to trial.  *See* Docket No. 320.

other than copyright infringement.  The University's argument presumes that the sales

of reformulated Materna were due to Cyanamid's copyright infringement.  The

University had the burden to show this connection.") (footnote omitted); *see also Polar*

*Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) ("Thus, a

copyright owner is required to do more initially than toss up an undifferentiated gross

revenue number; the revenue stream must bear a legally significant relationship to the

infringement."); *Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th Cir. 2002) (stating that the

copyright holder must demonstrate a "causal relationship between the infringement and

the profits generated indirectly from such an infringement"); *Motorvations, Inc. v. M & M,*

*Inc.*, 2001 WL 1045617, at *5 (D. Utah July 6, 2001) ("In a case such as this involving

indirect profits, the burden is on Plaintiff in the first instance to establish the causal

connection between the actual damages and profits, and the infringement.") (citing

*American Cyanamid*, 196 F.3d at 1375); *cf. Rainey v. Wayne State Univ.*, 26 F. Supp.

2d 963, 971 (E.D. Mich. 1998) ("Profits of the infringer may not be awarded where there

is no rational basis for determining them. Damages must be based on credible

evidence, not speculation.").[2]

Predator also claims as a theory of damages that it has lost sales from Gamo

USA's infringement.  Predator, however, fails to establish any connection between its

allegedly lost sales and copyright infringement, merely identifying reductions in sales

since the RED FIRE came on the market and expressing its belief that Gamo USA

would not have been in a position to sell more than one third of the identified lost sales

---

[2]Gamo USA argues, *see* Docket No. 314 at 4, and Predator does not dispute, *see generally* Docket No. 320, that this is an indirect profits case.

volume without use of Predator's copyrighted language.  This bare assertion is insufficient to support recovery of actual damages.  *See Fox Controls, Inc. v. Honeywell, Inc.*, 2005 WL 1705832, at *9 (N.D. Ill. July 14, 2005) ("According to plaintiff, it has 'direct evidence of its sales falling dramatically after Honeywell began copying and distributing its proprietary work and excluding Fox from participation in sales seminars. . . .'  Plaintiff continues: 'The finder of fact could directly link Fox's lost sales (and profits) to Honeywell's infringing activities.'  Because plaintiff does not elaborate on this statement or offer any evidence at all that could form a basis for this 'direct link,' the argument is rejected.") (citations omitted).

Predator's other arguments for damages fare no better.  Predator contends that, when conducting web searches which include the copyrighted language, many of the results are associated with RED FIRE.  Predator does not cite any evidence that this association is causing it damage.  Furthermore, considering that the search phrases Predator used include the companies' names, it is far from clear how Predator would like the Court to construe the table it provided that apparently demonstrates these search associations.  *See* Docket No. 310 at 4-5.  For example, Predator used the search terms "unsurpassed performance" along with "gamo red fire," which resulted in 841 "GAMO Hits."  Docket No. 310 at 4.  Predator, however, does not explain the nature of those "hits" and whether they resulted from the inclusion of "gamo" in the search terms or, to the extent "gamo" and "unsurpassed performance" appeared together, whether the use of "unsurpassed performance" on a particular website could

be attributed to Gamo USA.[3]

Predator contends that it abandoned opportunities to distribute the POLYMAG through Wal-Mart "because of risks to the business and risks associated with the additional capital needed" and through Crosman because of the "cloud on the value of Predator's business, assets and property" resulting from this case.  Docket No. 310 at 6.  These vague statements fail to establish any connection between the allegations of copyright infringement and actual damage to Predator.  As for Predator's request for "mental anguish" damages, Predator identifies no evidence that it has suffered any such harm, even assuming "mental anguish" damages are available to a corporate plaintiff in a copyright action.

On June 20, 2012, Predator filed a "supplement" [Docket No. 320] to its response to the order to show cause.  Although Gamo USA is correct that the document was filed without leave, *see* Docket No. 323 (Def.'s Motion to Strike), the Court has considered the substance of Predator's supplement.  The supplement responds to the points made in Gamo USA's Reply to Plaintiff's Response to Court's Order Dated June 5, 2012 [Docket No. 314], but fails to identify any evidence connecting any damages with the copyright contentions in this case.  Rather, it relies almost exclusively on evidence relating to the appearance of the respective pellets, only highlighting its failure to cite evidence connecting any damages with its copyright claim.  The court in *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 1983

---

[3]The Court further notes that, like much information relied upon by Predator, this data regarding search results is included in Predator's legal arguments without any citation to record evidence.

7

WL 1142, at *2 (C.D. Cal. Jan. 12, 1983), noted the difficulty in proving profits "attributable to the infringement" under § 504(b): "It will always be difficult and often impossible to calculate in a reasonable manner the revenues made from an infringing advertising campaign.  Sales are a function of many variables which are interrelated in complex and often unknown ways.  Although there may be cases in which this calculation can be made, the Court finds that plaintiffs have failed to present evidence sufficient to permit such a calculation in this case.").  The Copyright Act, however, does not leave plaintiffs who have been the victims of copyright infringement, but who cannot establish damages resulting from such infringement, without a remedy.  If a plaintiff is unable to meet the burden of establishing actual damages or demonstrating attributable profits, statutory damages are available.  *See Capitol Records, Inc. v. Thomas-Rasset*, 799 F. Supp. 2d 999, 1014 (D. Minn. 2011) ("Congress provided for statutory damages for the very reason that actual damages for copyright infringement are difficult to prove."); *In re Braun*, 327 B.R. 447, 450 (Bkrtcy. N.D. Cal. 2005) ("Congress presumably allows recovery of statutory damages in lieu of actual damages in copyright infringement actions because it recognizes that the existence of financial harm caused by a copyright infringer is difficult to prove and difficult to quantify accurately."); *see also Sparaco v. Lawler, Matusky, Skelly Engineers LLP*, 313 F. Supp. 2d 247, 253 (S.D.N.Y. 2004) (commenting that a plaintiff "seeks statutory damages for the copyright violation in the same way that a plaintiff who cannot prove damages for a tort or breach of contract claims nominal damages").[4]  To recover statutory damages, as well as

---

[4]*Cf. Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 796 (8th Cir. 2003) ("We agree that in an indirect profits case the profits 'attributable' to the infringement

attorney's fees, a plaintiff must have complied with the registration requirements of 17

U.S.C. § 412.  Here, Predator conceded that it failed to do so.  The Court therefore

granted Gamo USA summary judgment on Predator's copyright claim to the extent

Predator sought statutory damages and attorney's fees.  *See* Docket No. 308 at 4.

In light of the foregoing, there is no legal or factual basis upon which Predator is

entitled to relief on its copyright claim.  The Court therefore will grant Gamo USA

summary judgment on that claim.  Although, to the extent it is based upon copyright

infringement, Predator's CCPA claim remains, the Court will decline to exercise

supplemental jurisdiction over it.  *See* 28 U.S.C. § 1367(c)(3); *see also Bauchman v.*

*West High School*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed

before trial, leaving only issues of state law, 'the federal court should decline the

exercise of jurisdiction by dismissing the case without prejudice.'") (quoting *Carnegie-*

*Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)); *cf. Brooks v. Gaenzle*, 614 F.3d

1213, 1230 (10th Cir. 2010) ("'Notions of comity and federalism demand that a state

court try its own lawsuits, absent compelling reasons to the contrary.'") (quoting *Ball v.*

*Renner*, 54 F.3d 664, 669 (10th Cir. 1995)); *Hamilton v. Upper Crust, Inc.*, 2011 WL

3880932, at *10 (N.D. Okla. Sep. 2, 2011) ("The Court finds that the Tenth Circuit's

expressed preference for declining pendent jurisdiction outweighs the parties' slight

interest in preventing delay.").  As a result, the Court will dismiss the remaining portion

---

are more difficult to quantify."); *see also Rainey v. Wayne State University*, 26 F. Supp.
2d 963, 971 (E.D. Mich. 1998) ("Although plaintiff is correct that indirect profits of the
infringer may be awarded, such claims are difficult to prove and are often
unsuccessful.").

of Predator's CCPA claim without prejudice.[5]

For the foregoing reasons, it is

**ORDERED** that defendant Gamo USA is entitled to summary judgment on Predator's copyright claim.  It is further

**ORDERED** that the remaining portion of Predator's CCPA claim is dismissed without prejudice.  It is further

**ORDERED** that defendant's motion to strike [Docket No. 323] is DENIED.  It is further

**ORDERED** that defendant's motions *in limine* [Docket Nos. 334, 335, 336, 337] are DENIED as moot.  It is further

**ORDERED** that final judgment shall enter and this case shall be closed in its entirety.  It is further

**ORDERED** that the trial preparation conference scheduled for July 13, 2012 and the trial scheduled to commence on July 23, 2012 are VACATED.

---

[5]Upon entry of final judgment in this case, the Court will retain jurisdiction over Gamo USA's pending motions for sanctions [Docket Nos. 266, 276].  *See Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1218 (10th Cir. 2010) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)); *see Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) ("[T]he court may, notwithstanding dismissal of the underlying action, impose sanctions under Federal Rule of Civil Procedure 11, impose costs, impose attorney's fees, or undertake contempt proceedings.") (citations and footnote omitted).

DATED July 5, 2012.

BY THE COURT:

s/Philip A. Brimmer
_____
PHILIP A. BRIMMER
United States District Judge